# In the United States Court of Federal Claims

No. 12-435C
(Filed: July 31, 2017)[1]

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | |
| | * | |
| **MATTHEW WARD,** | * | Military Pay; Disability Benefits; |
| | * | 10 U.S.C. § 1201; 28 U.S.C. § |
| Plaintiff, | * | 1491; Army Reg. 635-40; Physical |
| | * | Evaluation Board; Waiver; Army |
| v. | * | Board for Correction of Military |
| | * | Records; Remand. |
| **THE UNITED STATES,** | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

Kurt Thornbladh, Thornbladh Legal Group PLLC, 7301 Schaefer Road, Dearborn, MI 48126, for Plaintiff.

Chad A. Readler, Robert E. Kirschman, Jr., Douglas K. Mickle, and William P. Rayel, United States Department of Justice, Civil Division, Commercial Litigation Branch, PO Box 480, Ben Franklin Station, Washington, D.C., 20044, for Defendant.  Major Daniel L. Mazzone, U.S. Army Legal Services Agency, 9275 Gunston Road, Fort Belvoir, VA 22060, Of Counsel.

### OPINION AND REMAND ORDER

**WILLIAMS**, Judge.

This military pay case comes before the Court on the parties' cross-motions for judgment on the Administrative Record ("AR"). Plaintiff, Matthew Ward, was medically discharged from the Army as being unfit for duty due to severe gastroesophageal reflux and was not awarded disability benefits. Plaintiff claims the disorder was either incurred or permanently aggravated while he was on active duty and requests that the Court remand this matter to the Secretary of the Army with instructions to award Plaintiff a 50% disability rating effective July 4, 2006, the date of his discharge.

---

[1]   On July 17, 2017, the Court issued this Opinion and Remand Order under seal, and directed the parties to file proposed redactions by July 26, 2017.  As neither party proposed any redactions, the Court publishes this Opinion and Remand Order without redactions.

## Findings of Fact[2]

### Plaintiff's Military Service

On December 23, 2002, Plaintiff entered the United States Army as a member of the Judge Advocate General Corps ("JAG"). AR 119. Plaintiff served on active duty until July 4, 2006, when he was medically discharged due to a disability - - severe gastroesophageal reflux disease ("GERD") - - which rendered him unfit to perform the duties of his office. AR 1, 119.

In April 2003, upon completion of his Officer Basic Course training, the Army assigned Plaintiff to the 4th Infantry Division in Fort Hood, Texas. AR 119-20, 189. On May 15, 2003, Plaintiff was deployed to Iraq as part of Operation Iraqi Freedom, serving as an attorney helping to rebuild the Iraqi court system. AR 99, 120. As part of his duties, Plaintiff frequently traveled throughout northern and central Iraq by helicopter and convoy. AR 99. On these missions, Plaintiff and his team were subjected to "constant mortar[], rocket[], and small arms fire," and while deployed, Plaintiff "witnessed much death and destruction." AR 189. Plaintiff's duties included investigating improvised explosive device attacks that occurred around the base where Plaintiff was stationed. AR 214. In March 2004, Plaintiff returned to Fort Hood, and in July 2005, changed duty locations, moving to Fort Carson, Colorado, where he served as a defense counsel assigned to the Trial Defense Service until he was discharged. AR at 119-22.

### Plaintiff's Medical Issues During His Enlistment

Throughout his time in the Army, Plaintiff consistently received exemplary ratings for his legal work. However, Plaintiff also experienced medical issues that affected his ability to perform his duties. Prior to joining the Army, while he was in college in 2000, Plaintiff began noticing "[s]ome heartburn . . . but not constant" and would take periodic "over-the-counter antacids." AR 12, 105. Later, while Plaintiff was in law school, his heartburn symptoms became worse, particularly during examination time. AR 12. During his military service, when Plaintiff was initially stationed at Fort Hood, prior to his deployment to Iraq, he began to complain of severe heartburn, and was prescribed Prilosec to control his symptoms. AR 12-13. During his time in Iraq, Plaintiff's epigastric symptoms worsened. In December 2003, he was treated in Germany, and was again prescribed Prilosec. AR 13. Plaintiff reported that he felt about a "70% improvement," but attributed this improvement to ceasing heavy physical training. AR 13. Plaintiff completed his deployment in May 2004, and returned to Fort Hood. AR 12-13.

Upon returning to Fort Hood, Plaintiff reported that when he started resuming physical training, his symptoms worsened. AR 13. In June 2004, Plaintiff sought a medical evaluation and had an upper endoscopy. AR 13. The contemporaneous report from this evaluation indicated that Plaintiff had "Grade 2 erosive esophagitis" and a hiatal hernia. AR 13. Plaintiff's Army medical records also indicate that he suffered a shoulder sprain in March 2006. AR 31.

---

[2] The findings of fact are derived from the AR.

**Medical Evaluation Board Proceeding**

During his military service, Plaintiff reported experiencing "significant" reflux symptoms. AR 13. As a result, when Plaintiff's duty location changed to Fort Carson in July 2005, Plaintiff underwent a Medical Evaluation Board ("MEB") consultation, where he was examined by Army gastroenterologist, Dr. Peter McNally. AR 105. Dr. McNally noted that Plaintiff suffered from "(1) [s]evere gastroesophageal reflux refractory to maximal medical therapy associated with high reflux and symptoms that worsen his performance during physical fitness, (2) [i]diopathic gastroparesis and (3) [e]xercise induced shortness of breath related to his high esophageal reflux." AR 15. Dr. McNally recommended that Plaintiff be placed on a permanent P-3 profile meaning that he was "[u]nable to perform full effort except for brief or moderate periods," and also recommended that Plaintiff undergo a Medical Evaluation Board, and Plaintiff did so in May 2006. Army Reg. 40-501 at 75; AR 13, 107.

MEBs are "convened to document a Soldier's medical status and duty limitations insofar as duty is affected by the Soldier's status." The MEB determines a soldier's "medical qualification for retention . . . ." Army Reg. 635-40 at 9. If the MEB determines the soldier "does not meet retention standards, the board will recommend referral of the soldier to a PEB [Physical Evaluation Board]." Id. A soldier's physician submits a Narrative Summary to the MEB, describing the history and severity of a soldier's condition. Id. The Narrative Summary to the MEB "is the heart of the disability evaluation system. Incomplete, inaccurate, misleading, or delayed [Narrative Summaries] may result in injustice to the Soldier or to the Army." Id.

On April 27, 2006, Dr. John Wilhite, a "Family Practice" and "MEB Physician" submitted a Narrative Summary describing Plaintiff's medical history, surgeries, past diagnostic studies, and consultations, to the MEB. AR 12-17. The Narrative Summary described Plaintiff's "functional status and prognosis," stating:

> This Soldier continues to work . . . performing his duties as an attorney but is unable to deploy.
>
> His medical condition affects his ability to perform the duties of his [military occupational specialty] in that he states he cannot meet all of the requirements of a JAG officer in today's Army in that he cannot deploy to the field to assist commanders in the field. He reports, it is one of [a] JAG officer's primary functions.

AR 15. With respect to "other military training and duties affected," Dr. Wilhite noted that Plaintiff could not "move with a fighting load, construct an individual fighting position, do 3 to 5 second rushes, or be deployed. No running, sit-ups or push-ups." AR 16. Dr. Wilhite concluded:

> [Plaintiff's] prognosis can best be estimated as stable. Dr. McNally has noted in his MEB dictation that [Plaintiff] may at some point need to be considered for surgical treatment.

AR 16. Finally, Dr. Wilhite's Narrative Summary indicated that when asked if he "wanted to continue on active duty," Plaintiff replied "No." AR 16.

3

Plaintiff's Commanding Officer submitted a "Performance Statement" to the MEB on March 22, 2006. Based on conversations with Plaintiff and his former co-workers and supervisors about Plaintiff's medical condition and a review of his medical records, the Commanding Officer reported that, after his transfer to Fort Carson in July 2005, Plaintiff:

> has been unable to engage in regular physical training. [Captain] Ward can barely walk at a fast clip for a long period of time before he is in serious discomfort, and that discomfort lasts and interferes with the entire duty day. Currently, he has been unable to pass a PT test, even with a modified event.

AR 100.

Plaintiff's Commanding Officer concluded that although Plaintiff was "an outstanding attorney," he could not:

> send him to Iraq or any other austere location in the world, because he simply cannot meet the physical requirements of the position. He is unfortunately a liability; I need an officer who can go to Iraq on little notice, prepare and defend a case, and then return to Fort Carson. CPT Ward is unable to do this and is therefore occupying a much-needed position in my unit.

AR 101.

The MEB report, DA Form 3947, signed by Dr. Peter McNally and Dr. John Wilhite, stated that after consideration of clinical records, laboratory findings, and physical examination, the Board found that Plaintiff suffered from "[s]evere gastroesophageal reflux disease (GERD) refractory to maximal medical therapy and associated with high reflux and symptoms that worsen his exercise performance during physical fitness." AR 8. The MEB determined that this condition caused Plaintiff to fall below retention standards and concluded that Plaintiff incurred this condition while he was entitled to "base pay," that this condition did not "exist[] prior to service," and was "permanently aggravated by service." AR 8. The MEB noted that Plaintiff also suffered from "Idiopathic gastroparesis," "[e]xercise induced shortness of breath related to his high gastroesophageal reflux," and "Dyslipidemia," but determined that these conditions did not cause him to fall below retention standards. AR 8. Deputy Commander of Clinical Services, John A. Johnson, approved the MEB's findings and recommendation that Plaintiff be referred to a Physical Evaluation Board for adjudication of his fitness for duty. AR 8-9. Plaintiff agreed with the MEB's findings and recommendations. AR 9.

**Physical Evaluation Board Proceedings**

The PEB evaluates a service member's condition "against the physical requirements of the Soldier's particular office, grade, rank or rating" and determines whether a soldier is eligible to be separated or retired because of a disability. Army Reg. 635-40 at 12. After referral from the MEB, a service-member's case is first considered by an "informal PEB." Id. at 19. The informal PEB determines the soldier's fitness and what action to take - - whether to permanently retire the soldier, separate the soldier with severance, or put the soldier on the Temporary Disability Retired List. Id. at 14-19.

4

If the informal PEB determines that a service member has an "unfitting condition," it then determines whether to assign a disability rating entitling the service member to compensation. Id. at 101. For a service member to be eligible for severance or retirement pay, the disability "must have been incurred or aggravated while the Soldier was entitled to basic pay or as the proximate cause of performing active duty or inactive duty training." Id. at 5.

The informal PEB consisted of three designated personnel - - including a "medical member."[3] AR 19. On May 24, 2006, the informal PEB determined that Plaintiff's "[c]hronic esophagitis with hiatal hernia, chronic reflux into the esophagus and delayed gastric emptying time of undetermined etiology" rendered Plaintiff medically unfit for duty. AR 1. However, the PEB concluded that Plaintiff's condition existed prior to service, and "followed a course of normal progression without permanent aggravation according to accepted medical principles." As a result, the PEB recommended separation without disability benefits. AR 1. By checking and initialing a line on Form DA 199, Physical Evaluation Board Proceedings, Plaintiff concurred with the informal PEB's fitness determination and waived his right to a formal PEB hearing. AR 3.

**Plaintiff's Discharge**

Plaintiff was discharged from the Army on July 4, 2006, without disability benefits. Plaintiff's Certificate of Release or Discharge from Active Duty stated that his separation was due to "disability, existed prior to service, Physical Evaluation Board (PEB)." AR 119.

**Plaintiff's Medical Examinations at the VA and VA Disability Ratings**

In June 2006, Plaintiff first applied to the Department of Veterans' Affairs ("VA") for disability benefits. AR 832-41. Plaintiff sought disability benefits for the following conditions:

- GERD [Gastroesophageal Reflux Disease]
- Hiatal Hernia
- Idiopathic Gastroparesis
- Exercise-induced shortness of breath secondary to GERD
- Pes Planus with orthotics
- Shin splints with orthotics
- Allergies
- Hypertension
- Erosive Esophagitis
- Upper and lower back pain
- Hemorrhoids.

AR 836-37. The VA granted Plaintiff a 10% disability rating, on October 12, 2006, for "gastroesophageal reflux disease, history of hiatal hernia, gallbladder remov[al], also claimed as gastroparesis and erosive gastritis[.]" AR 747-48. The VA determined that Plaintiff's condition existed prior to service, but was "permanently worsened as a result of service." AR 753. The VA determined that Plaintiff's shortness of breath on exertion due to GERD, hypertension, pes planus,

---

[3] Medical members are either members of the Medical Corps or Army civilian physicians. Army Reg. 635-40 at 12.

and upper back pain were not related to his military service and thus did not warrant a disability rating. AR 752.

In August 2006, Plaintiff underwent several medical examinations so that the VA could assess whether he was entitled to disability benefits. AR 761-805. In an examination on August 19, 2006, for mental disorders (excluding Post-Traumatic Stress Disorder ("PTSD") and eating disorders), Plaintiff's "mental status" was determined to be within normal limits, although he reported some symptoms of generalized anxiety. AR 801-04.

In October 2006, during a VA preventative health screening, Plaintiff was first screened for PTSD, and this screen was negative. AR 165, 284-85. In a December 11, 2006 VA examination, Plaintiff reported that he did not:

> "feel unhappy, depressed, or anxious" and that he had had "[n]o crying spells. No lingering insomnia. No homicidal or suicidal ideation" and reported that although he was in Iraq for a year, he had "no lingering issues that he want[ed] help with."

AR 282. The following year in September 2007, Plaintiff underwent a VA medical examination for PTSD and did not exhibit any symptoms. AR 165, 277.

During a February 2008 VA examination, Plaintiff reported that he suffered from a "tremendous amount of anxiety" and had "[s]tarted getting depressed in the fall." AR 262-63. He informed the doctor that he had a "[l]ong history of anxiety" and "[d]id ok his [first] six months in Iraq then started getting increasingly anxious." AR 262. A VA doctor diagnosed Plaintiff with PTSD in March 2008. AR 257.

In December 2008 and March 2009, Plaintiff sought additional VA disability benefits and requested that the VA "amend his service connected disability claim to include the additional conditions of depression/PTSD, [Traumatic Brain Injury], [a] right shoulder/upper back strain," and carpal tunnel syndrome. AR 570, 725. In October 2009, the VA rendered a decision on Plaintiff's claims and determined that Plaintiff's PTSD and right shoulder strain were service connected and assigned Plaintiff a 30% disability rating for PTSD and 10% for his shoulder strain. AR 525. The VA did not assign Plaintiff a disability rating for his carpal tunnel syndrome, finding it was not service connected and denied benefits for Plaintiff's reported upper back pain, because "the evidence submitted [was] not new and material." AR 525. The VA deferred a decision on Plaintiff's claimed Traumatic Brain Injury, stating that it needed additional information. AR 525. Plaintiff was assigned an overall disability rating of 40%. AR 525.

**Procedural History**

On July 5, 2012, Plaintiff filed a complaint in this Court challenging the PEB's denial of a disability rating and seeking disability retirement and benefits, or alternatively separation pay. On October 9, 2012, the Court granted Plaintiff's unopposed motion to stay proceedings while he pursued administrative remedies with the Army Physical Disability Review Board and/or the Army Board for the Correction of Military Records ("ABCMR"). Order (Oct. 9, 2012).

**The ABCMR Proceedings**

On October 9, 2012, Plaintiff submitted DD Form 293, Application for Review of Discharge, to the Army Review Boards Agency. AR 185. In his application, Plaintiff sought a

30% disability rating for his GERD and a 30-50% disability rating for Post-Traumatic Stress Disorder. AR 189-90. Because a DD Form 293 request is under the purview of the Army Discharge Review Board ("ADRB"), which considers requests for changes in the type of discharge, but not disability ratings, Plaintiff's application was forwarded to the ABCMR, which can award disability ratings. See 10 U.S.C. § 1552(a)(1) (2016) (the Secretary of a military department "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." These corrections are made by the Secretary through Corrections Boards such as the ABCMR).

In his application, Plaintiff stated that he did not challenge the May 2006 informal PEB decision denying disability benefits because "[s]ix months into deployment, [his] mind and body had enough, and [he] began suffering from [chronic esophagitis]" and he was "motivated to get out of the Army ASAP, to leave the stress and to care for [his] family." AR 189. Plaintiff concluded: "although the PEB entirely contradicted the MEB, and mental health was not raised, [he] agreed with anything and moved on." AR 189.

Plaintiff also informed the ABCMR that in November 2003, while on active duty, he had witnessed the death of a close family friend, when his friend's helicopter was shot down. AR 189. In providing background regarding the MEB's and PEB's determinations, Plaintiff explained that a behavioral health evaluation was not part of his MEB, which "[i]n 2006, at [Fort] Carson, . . . was common," and although he "complained of significant stress affecting [his] GI issue to the MEB . . . there was no further analysis." AR 192. Plaintiff continued that he "wish[ed] that [he] had the 'nerve' to see behavioral health [services]. . . . [but] felt a stigma, that it would ruin [his] career or ability to be an attorney." AR 189. Plaintiff stated that he had "personal issues with the head of Psychiatry . . . [who was] often a government witness testifying against [Plaintiff's] clients often dismissing the effects of PTSD." AR 189.

In support of his application that was ultimately considered by the ABCMR, Plaintiff submitted the following:

- DA Form 3947 – the MEB's findings
- His February 15, 2006 MEB consultation with Dr. McNally
- The MEB's Narrative Summary
- DA 199 – the PEB Proceedings
- DD Form 214 (Certificate of Release or Discharge from Active Duty)
- September 2009 VA Rating Decision
- VA Medical Center progress notes on his PTSD
- A U.S. Court of Appeals for Veterans Claims decision
- Medline Plus Medical Encyclopedia entry for hiatal hernia
- VA 21-0781 Statement in Support of Claim for Service Connection for PTSD and related documents.

AR 157, 194-323.

On September 19, 2013, Dr. Gilbert Teague, DDS, MD, a Colonel in the Medical Corps, and a medical advisor to the Army Review Boards Agency, submitted a memorandum to the ABCMR, assessing Plaintiff's application for a change in his disability rating. AR 165-66. Dr. Teague "reviewed the documents submitted and the Discussion and Conclusions of the proposed

7

Record of Proceedings (ROP)." AR 165. Dr. Teague stated the following regarding Plaintiff's PTSD:

> As stated in the ROP there is no evidence that [Plaintiff] had PTSD at the time of separation. In fact, there is considerable evidence to the contrary. His commander made it clear that he functioned well as a JAG officer and that his only limitations were physical. We do not have the results of his separation physical which screens for PTSD but we do have the following:
>
> a. In OCT 2006, less than 4 months after separation, [Plaintiff] was routinely screened by the VA for PTSD. He screened negative, answering every question negative.
>
> b. In SEP 2007, over a year after separation routine VA screening was negative for both depression and PTSD with no affirmative responses.

AR 165.

> Dr. Teague noted the following regarding Plaintiff's epigastric condition:
>
> [Plaintiff's] gastro esophageal reflux disease existed prior to service. The applicant reported at various times to military and VA physicians that he had longstanding heartburn when stressed. He first noted it at age 19.
>
> [Plaintiff's] gastro esophageal reflux disease was not permanently service aggravated. His symptoms were worse when stressed and improved when stressors were absent. He expected to get better when he got "away from the bombs". According to the commander, though he was needed for deployment on short notice and was unable to do so. His report of weight loss in Iraq seems to have been alleviated and he is noted in VA records to be obese. Although [Plaintiff] experienced periods of exacerbated symptoms, the record does not show any permanent aggravation. In fact, he has a reasonable chance of being cured if he submits to surgery.

AR 165.

> Dr. Teague concluded his findings with the following:
>
> [Plaintiff] does not question the PEB's fitness decision, concurred with the determination that he was unfit (and that it existed prior to service), and made it known that he wanted to leave the Army. The determination that he was unfit was based on a profile that precluded deployment, and a commander's statement that said he functioned well in his JAG MOS but was physically unfit to the extent that he could not pass a PT test and could not meet the physical requirements of deployment. Although his gastroenterologist opined that his poor physical condition was due to reflux, this is without sound medical basis. Additionally, the reflux was known to be secondary to a hiatal hernia and [Plaintiff] refused recommended surgery to correct his hiatal hernia. He flatly stated to his MEB physician that he did not want to remain in the Army. The VA rated his reflux at

> 10% and 2 years after separation the VA added a 30% rating for PTSD, leaving his 10% rating for reflux intact.

AR 166. Dr. Teague recommended that Plaintiff's application seeking a 30 to 50% disability rating for PTSD and a 30% disability rating for his severe gastroesophageal reflux be denied. AR 166.

In October 2013, the ABCMR denied Plaintiff's application, and made the following determinations:

> The available evidence clearly shows that the applicant admitted his DX1 medical condition began while he was 19 years of age and in college. A VA Progress Note dated 2008 indicates that it may have started even earlier. The MEB clearly, but incorrectly, determined that this medical condition was incurred while he was on active duty in 2003. However, the PEB determined from the available evidence that this condition existed prior to his service. The applicant's contention that the PEB had improperly disregarded the expert doctor's opinion in the MEB is without merit.
>
> The PEB determined that the applicant's medical condition had progressed normally and was not permanently aggravated by military service. Accordingly, he was not entitled to receive disability benefits for his condition.
>
> The available evidence shows that the applicant did not desire to continue on active duty. He agreed with the findings of the PEB and waived his opportunity to have his case presented to a formal PEB. His arguments now concerning how he was worried about the stigma of going to behavioral health and a personality conflict with the psychiatrist are little more than retrospective thoughts. He has not provided any documentary evidence showing that what was done resulted in an error or injustice. He has not provided sufficient documentation showing that his subsequent family and financial difficulties are due to anything the Army should have done, but did not do.
>
> There is no evidence in the record showing that [Plaintiff] suffered from PTSD while on active duty. Furthermore, there is no evidence showing that even if he did suffer from PTSD, that it was an unfitting condition.
>
> Although [Plaintiff's] service medical records were not available for review, the VA clearly stated in [its] rating decision that his service medical records did not show any complaints of, treatment for, or diagnosis of PTSD.

AR 162-63.

In November 2013, Plaintiff notified the Court that he intended to seek reconsideration of the ABCMR's decision, but did not do so.

On November 24, 2015, the Court referred Plaintiff, who was pro se, to the pro bono/attorney referral program.

9

On January 12, 2015, Defendant filed a supplement to the AR with documentation developed and considered by the ABCMR in conjunction with its consideration of Plaintiff's application.

On December 13, 2016, Plaintiff's counsel entered an appearance in this case. On January 6, 2017, Plaintiff, through counsel, filed his motion for judgment on the AR, and the record was closed on May 18, 2017, after oral argument.

## Discussion

### Jurisdiction

The Tucker Act, 28 U.S.C. § 1491, confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Although the Tucker Act waives sovereign immunity of the United States for claims for money damages, the "Act itself does not create a substantive cause of action." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005). "[I]n order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Id. (citing United States v. Mitchell, 463 U.S. 206, 216 (1983)).

Here, Plaintiff claims entitlement to disability pay under 10 U.S.C. § 1201. Section 1201 provides that a service member may be retired for disability upon a determination by the Secretary concerned that the member is "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay . . . ." § 1201(a) (2016). Section 1201 is a separate source of substantive law that creates the right to money damages. See Chambers v. United States, 417 F.3d 1218, 1223 (Fed. Cir. 2005) ("Here [plaintiff] claims entitlement to military disability pay under 10 U.S.C. § 1201, a money-mandating statute.").

### Standard of Review

Rule 52.1 governs motions for judgment on the AR, and provides for "trial on a paper record, allowing fact-finding by the trial court." Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Factual questions must be resolved by reference to the AR, "as if [the Court] were conducting a trial on the record." Id. at 1354.

In reviewing the Board's decision, the Court "cannot substitute [its] judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). Thus, the Court's review of an administrative decision by a Correction Board is limited to determining whether the Correction Board's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. See Chisolm v. United States, 41 F. App'x 394, 397 (Fed. Cir. 2002) ("[W]e apply the same standard of review the trial court did. Accordingly, we will not disturb the Correction Board's decision unless it was arbitrary, capricious, contrary to law, or unsupported by substantial evidence."); see also Flowers v. United States, 80 Fed. Cl. 201, 212 (2008) ("[R]eview of an administrative decision by a Correction Board 'is limited to determining whether the [Correction Board's] action was arbitrary, capricious, or in bad faith, or unsupported by substantial

evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced.'" (alteration in original) (quoting Clayton v. United States, 225 Ct. Cl. 593, 595 (1980))). The Court does not serve as a "super correction board." Stine v. United States, 92 Fed. Cl. 776, 791 (2010) (internal citation and quotation marks omitted).

"Although courts afford great deference to the decisions of boards for the correction of military records, that deference is not absolute. Correction boards are obligated to examine relevant data and articulate a satisfactory explanation for their decisions." See Rominger v. United States, 72 Fed. Cl. 268, 273 (2006) (internal citation and quotation marks omitted). "[C]orrection boards are required to make rational connections between the facts found and the choices made." Id. (internal citation and quotation marks omitted). In the event a correction board "fails to support its decision with a reasoned explanation of an important issue, a remand is appropriate." Id.

Plaintiff bears the burden of providing "cogent and clearly convincing evidence" that the Correction Board's action was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (internal citation and quotation marks omitted); see also Dodson v. U.S. Gov't, Dep't of Army, 988 F.2d 1199, 1204-05 (Fed. Cir. 1993).

**Plaintiff Did Not Waive His Right To Judicial Review Of The ABCMR's Decision**

Defendant argues that Plaintiff waived his right to obtain judicial review of the ABCMR's decision when Plaintiff indicated on DA Form 199 that he concurred with the informal PEB's determination that he was not entitled to disability benefits and waived a formal hearing. Plaintiff asserts that his acquiescence in the informal PEB determination does not bar him from proceeding via a different route invoking the ABCMR procedure. Precedent supports Plaintiff's position.

In Gant v. United States, 417 F.3d 1328, 1329 (Fed. Cir. 2005) (per curiam), the plaintiff indicated on a form that he accepted the findings of the informal PEB and waived a formal PEB hearing, but did not seek further relief from a military corrections board. The Court found that the plaintiff waived judicial review of the same informal PEB's decision in which he had acquiesced. In Van Cleave v. United States, the Court reiterated the Gant rationale, and explained that while the Gant plaintiff's voluntary waiver of a formal PEB precluded judicial review of that same informal PEB determination, the waiver of a formal PEB did not "preclude judicial review of the Board for the Correction of Naval Records." 66 Fed. Cl. 133, 136 (2005). Again, in Rominger, the Court found that the plaintiff who had elected not to seek review from a formal PEB was nonetheless "entitled to judicial review of the ABCMR's decision not to correct the record." 72 Fed. Cl. at 272-73. Finally, in Meidl v. United States, the Court found that the plaintiff had voluntarily waived judicial review of the informal PEB, but this waiver did "not preclude review by the [ABCMR] or review by the United States Court of Federal Claims of any decision by that Board." 100 Fed. Cl. 1, 8 (2011); Meidl v. United States, 108 Fed. Cl. 570, 573-74 (2013).

**The ABCMR Failed to Follow Army Regulation 635-40**

**Plaintiff's Severe Gastroesophageal Reflux**

Plaintiff claims that the ABCMR ignored the findings of the MEB that his severe gastroesophageal reflux was service-related and instead adopted the PEB's medically undocumented, conclusory finding that this condition existed prior to service. Plaintiff further

11

argues that the ABCMR violated Army Regulation 635-40 by failing to afford him the presumptions mandated by that regulation. Tr. 23-26.

Army Regulation 635-40 sets forth the "policies, responsibilities, and procedures that apply in determining whether a Soldier is unfit because of physical disability to reasonably perform the duties of his or her office, grade, rank or rating." Army Reg. 635-40 at 1. That regulation establishes that the Army shall afford a service member certain delineated presumptions in assessing a physical disability, stating:

> The following presumptions will apply to physical disability evaluation:
>
> a. Before and during active service.
> (1) A Soldier was in sound physical and mental condition upon entering active service except for physical disabilities noted and recorded at the time of entry.
>
> (2) Any disease or injury discovered after a Soldier entered active service, with the exception of congenital and hereditary conditions, was not due to the Soldier's intentional misconduct or willful neglect and was incurred in line of duty (LD).
>
> (3) If the foregoing presumptions are overcome by a preponderance of the evidence, any additional disability or death resulting from the preexisting injury or disease was caused by military service aggravation. (Only specific findings of "natural progression" of the preexisting disease or injury, based upon well-established medical principles are enough to overcome presumption of military service aggravation.)
>
> \*   \*   \*
>
> (5) The foregoing presumptions may be overcome only by a preponderance of the evidence, which differs from personal opinion, speculation, or conjecture. When reasonable doubt exists about a Soldier's condition, an attempt should be made to resolve the doubt by further clinical investigation and observation and by consideration of any other evidence that may apply. In the absence of such proof by the preponderance of the evidence, reasonable doubt should be resolved in favor of the Soldier.

Id. at 4 (emphasis added).[4]

Under this regulation, Plaintiff is presumed to have been in sound physical and mental condition upon entering active duty, "except for physical disabilities recorded at the time of entry." Id. There were no physical disabilities recorded when Plaintiff entered active duty. AR 14, 149-50. Rather, Plaintiff's Medical Entrance Physical Examination in April 2002, was "remarkable only for some asymptomatic mild pes planus [flat feet]." AR 14, 149-50.

---

[4] The Court cites the version of Army Regulation 635-40 in effect when the MEB and PEB made their decisions. Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005).

The PEB and ABCMR did not apply this presumption and summarily rejected the findings of the MEB, which had followed the regulation. The MEB reviewed Plaintiff's medical history, acknowledging that Plaintiff had "first started noting 'some heartburn while [he] was in college,'" but, consistent with the regulation, relied upon the record of Plaintiff's entrance physical examination to conclude that no gastrointestinal disease or acid reflux conditions were recorded at the time of entry. AR 12, 14, 149-50; see also AR 158. The MEB determined that Plaintiff's condition did not exist prior to service and was permanently aggravated by service. The MEB concluded that Plaintiff's "[s]evere gastroesophageal reflux disease" caused him to fall below retention standards. AR 202, 204.

The PEB and the ABCMR arbitrarily rejected the MEB's findings and failed to apply the presumption mandated by Army Regulation 635-40. The ABCMR, relying upon Dr. Teague, a dentist and M.D. (instead of Dr. McNally - - a gastroenterologist) emphasized the fact that some three years after entering active duty, Plaintiff reported that he first had noted "some heartburn while in college." AR 158-60. The ABCMR failed to analyze whether this post-entry, self-reported "heartburn," was sufficient evidence to overcome the presumption that Plaintiff was not suffering from "severe gastroesophageal reflux" and was "in sound physical condition" when entering active duty. The ABCMR without explanation concluded that even though it was not reported when Plaintiff entered duty, the severe condition Plaintiff exhibited at discharge was nonetheless a pre-existing condition.

There is evidence supporting the MEB's conclusion that the PEB and ABCMR did not address. The AR indicates that just over three years after entering active duty, Plaintiff underwent an active-duty MEB consultation, in February 2006, following a combat stint in Iraq, when his epigastric issues began to increasingly interfere with his duties. AR 195. It was at that time that Dr. Peter McNally, a gastroenterologist, determined that Plaintiff suffered from "[s]evere gastroesophageal reflux refractory to maximal medical therapy with associated high reflux and symptoms that worsen his exercise performance during a physical fitness [test]," idiopathic gastroparesis, and exercise induced shortness of breath related to high gastroesophageal reflux. AR 197. Dr. McNally recommended that Plaintiff be placed on a P-3 profile as he was "[u]nable to perform full effort except for brief or moderate periods," and be considered for Medical Evaluation Board and termination from service "since it is unlikely that his gastroesophageal reflux will improve." AR 197; Army Reg. 40-501 at 75.

The ABCMR's methodology and analysis did not comport with regulation because the Board failed to afford Plaintiff the required presumption based upon his record. While the ABCMR cited Army Regulation 635-40 and noted that disability compensation is only available for service members with unfitting conditions that were service-incurred or permanently aggravated by service, the Board did not mention the presumptions mandated by the regulation or consider whether evidence rebutted them. See AR 161. Yet as Defendant's counsel acknowledged during oral argument, Plaintiff was entitled to these presumptions. Tr. 52.

The Board compounded this error in concluding that the severe gastroesophageal reflux that rendered Plaintiff unfit for duty was the "natural progression" of his heartburn and was not aggravated by service. However, Army Regulation 635-40 contains a clear directive about the nature of the evidence required to show the natural progression of a pre-existing condition. The regulation expressly requires "specific findings" that a pre-existing condition naturally progressed into a disqualifying condition that rendered a soldier unfit for duty, supported by "well-established

medical principles" to overcome the presumption of military-service aggravation. The regulation states:

> Only specific findings of "natural progression" of the preexisting disease or injury, based upon well-established medical principles are enough to overcome the presumption of military service aggravation.

Army Reg. 635-40 at 4.

In the ABCMR's decision, there is no mention or description of what the "natural progression" of Plaintiff's "heartburn" to "severe gastroesophageal reflux" would be, let alone "specific findings" of such progression based upon "well-established medical principles" as required by the regulation. The extent of the ABCMR's analysis was that the "available evidence clearly shows that [Plaintiff] admitted his DX1 medical condition began while he was 19 years of age and in college [and a] VA progress Note dated 2008 [stating that Plaintiff "always had heartburn in the chest when stressed"] indicates that it may have started even earlier." AR 162.

However, Plaintiff reported in his MEB consultation that he had a "history of mild gastroesophageal reflux since about 19 years of age." AR 105 (emphasis added). Neither the PEB nor the ABCMR accounted for the change in Plaintiff's gastroesophageal reflux from "mild" to "severe," or explained why the worsening of the condition was attributable to "natural progression" rather than military service aggravation. Whatever heartburn or acid reflux Plaintiff may have had did not prevent Plaintiff either from being accepted for military service or from performing his duties - - including combat in Iraq - - for over three years. However, a more serious apparently disabling condition - - "severe gastroesophageal reflux" - - unequivocally rendered Plaintiff unfit for duty after active service.

Further, Dr. Teague acknowledged his disagreement with the Army's gastroenterologist's findings, stating:

> [Plaintiff did] not question the PEB's fitness decision, concurred with the determination that he was unfit (and that it existed prior to service), and made it known that he wanted to leave the Army. The determination that he was unfit was based on a profile that precluded deployment, and a commander's statement that said he functioned well in his JAG MOS but was physically unfit to the extent that he could not pass a PT test and could not meet the physical requirements of deployment. Although his gastroenterologist opined that his poor physical condition was due to reflux, this is without sound medical basis. Additionally, his reflux was known to be secondary to a hiatal hernia and [Plaintiff] refused recommended surgery to correct his hiatal hernia. He flatly stated to his MEB physician that he did not want to remain in the Army.

AR 166.

Although Dr. Teague disagreed with the gastroenterologist regarding Plaintiff's condition, he did not say why the Army's gastroenterologist's opinion that Plaintiff's "poor physical condition was due to reflux" was "without sound medical basis." AR 166. This stark disagreement between the MEB and the informal PEB raises "reasonable doubt" as to whether Plaintiff's condition was incurred during and/or was permanently aggravated by service under Army Regulation 635-40. The regulation states:

14

> [w]hen reasonable doubt exists about a Soldier's condition, an attempt should be made to resolve the doubt by further clinical investigation and observation and by consideration of any other evidence that may apply. In the absence of such proof by the preponderance of the evidence, reasonable doubt should be resolved in favor of the Soldier.

Army Reg. 635-40 at 4.

Neither the PEB nor the ABCMR acknowledged "reasonable doubt" about Plaintiff's condition even though there was a dispute between the Army doctors - - Dr. McNally and Dr. Teague - - and between the MEB and the PEB about whether Plaintiff's condition existed prior to service or was aggravated by service. Such a dichotomy of medical opinion raises "reasonable doubt" requiring either that further clinical investigation be conducted, or, absent the ability to garner additional evidence, that such "doubt be resolved in favor of the Soldier." Id.

In sum, the ABCMR violated Army Regulation 635-40 by failing to apply the presumption that Plaintiff's condition did not exist prior to service or make the required findings to rebut that presumption. The ABCMR also failed to articulate a reasoned basis for its conclusory disagreement with the MEB.

**PTSD Rating**

Plaintiff argues that the ABCMR improperly ignored the VA's determination that he had a 30% disability arising from PTSD. Pl.'s Mot. 22. Essentially, Plaintiff asserts that under 10 U.S.C. § 1216a and Department of Defense guidelines, the ABCMR was obligated to adopt the disability rating assigned to Plaintiff by VA. Plaintiff's argument is without merit.

The VA lacks the authority to determine whether or not a soldier is fit for duty, a determination that falls exclusively within the purview of the armed forces. Watson v. United States, 113 Fed. Cl. 615, 642 (2013). VA decisions are "not determinative of the issues involved in military disability retirement cases." Lord v. United States, 2 Cl. Ct. 749, 754 (1983); see also Bennett v. United States, 200 Ct. Cl. 635, 643-44 (1973) (per curiam) (noting that VA ratings are not indicative of a soldier's fitness for duty, and therefore are not "determinative of the issues involved in a disability retirement determination by the military"); Dzialo v. United States, 5 Cl. Ct. 554, 565 (1984) (recognizing that according to a "long line of decisions," VA ratings are "in no way determinative on the issue of [a] plaintiff's eligibility for disability retirement pay").

Plaintiff further claims that the ABCMR should have corrected his military records and granted him a 50% disability rating for his PTSD, because the VA determined that Plaintiff suffered from PTSD. However, as the ABCMR determined, the relevant time for a determination of whether Plaintiff is entitled to military disability benefits is when Plaintiff was separated from the service. Stine, 92 Fed. Cl. at 795 (explaining that the service branch "takes a snapshot of the service member's condition at the time of separation from the service, while the [VA] evaluates and adjusts disability ratings throughout the individual's lifetime."); see also Myers v. United States, 50 Fed. Cl. 674, 695 (2001) (finding that the record did not support a claim that the plaintiff's PTSD was an unfitting condition where plaintiff had a commendable military record). Because there was no evidence to suggest that at the time of separation, Plaintiff suffered from PTSD or that PTSD rendered him "unfit," the ABCMR reasonably determined that a correction of

Plaintiff's military disability rating to reflect a disability rating for PTSD was not warranted. See Johnson v. United States, 93 Fed. Cl. 666, 673 (2010) (citing Heisig, 719 F.2d at 1157).

**Shoulder Strain**

Although Plaintiff did not present a claim for his shoulder strain to the ABCMR, he argues to this Court that the ABCMR should have granted him a 10% disability rating based on the rating assigned by the VA. Pl.'s Mot. 22. However, "[m]atters not presented to the ABCMR are considered to be waived." Shaw v. United States, 100 Fed. Cl. 259, 260 (2011) (citing Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006)); see also United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while [the agency] has opportunity for correction in order to raise issues reviewable by the courts.").

As such, because Plaintiff did not request that the ABCMR correct his military records to reflect a 10% disability for a shoulder strain, that claim is not reviewable by this Court.

**Conclusion**

1. Plaintiff's motion for judgment on the AR is **GRANTED IN PART**.

2. Defendant's motion for judgment on the AR is **DENIED**.

3. The Court **REMANDS** this matter to the Army Board for the Correction of Military Records for further administrative action pursuant to Rule 52.2 and orders:

    a. That the ABCMR determine whether Plaintiff is entitled to disability benefits based upon his severe gastroesophageal reflux that rendered him unfit for duty as of July 4, 2006. Such determination shall be made in accordance with the procedures, presumptions and requirements in Army Regulation 635-40, ¶ 3-2.

4. The case is **STAYED** for the duration of remand proceedings.

5. Defendant shall file a Notice advising the Court of the ABCMR's decision on remand within 30 days of such decision.

    s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**